UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-204-GWU

JOYCE PHILLIPS,                                                          PLAINTIFF,

VS.                        **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                  DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

    in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform,

then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental

contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." <u>Abbott v. Sullivan</u>, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. <u>Id</u>. In such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Joyce Phillips, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of bilateral carpel tunnel syndrome, status post release surgeries in 2005; cardiomyopathy; gastroesophageal reflux disease; hypertension; and chronic obstructive pulmonary disease secondary to continued nicotine abuse. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Phillips retained the residual functional capacity to perform a significant number of jobs existing in the economy,

and therefore was not entitled to benefits. (Tr. 19-23). The Appeals Council declined to review (Tr. 7-9), and this action followed.

At the administrative hearing, the ALJ asked the VE if a person of the plaintiff's age of 51, high school equivalency degree, and semi-skilled work experience as a seamstress could perform any jobs if she were limited to "light" level exertion, with the ability to sit, stand, and walk up to six hours each in an eight-hour day, and also had the following non-exertional restrictions. She: (1) was capable of "frequent" handling, fingering, and feeling with the upper extremities; (2) could not work with her hands overhead; (3) could not use vibrating hand tools; (4) should not perform any aerobic activity such as running or jumping and could not be exposed to concentrated dust, gases, smoke, fumes, poor ventilation, excess humidity, or temperature extremes; and (5) would require entry level work with simple, repetitive procedures, no frequent changes in work routines, and no requirement for detailed or complex problem-solving, independent planning, or the setting of goals. (Tr. 654). The VE responded that there were jobs that such a person could perform such as cashier and inspector/sorter at the light level, and lens inserter/final assembler in the optical field, and information clerk at the sedentary level. (Tr. 656).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.

Mrs. Phillips alleged disability beginning January 17, 2005 due to carpel tunnel syndrome in both hands, coronary artery disease, and acid reflux disease. (Tr. 63).[1]  Her primary complaint at an administrative hearing on January 6, 2010 was of bilateral hand pain from carpel tunnel syndrome, which prevented her from using them for more than approximately 30 minutes.  (Tr. 641-2).  She also had a poor grip and tended to drop objects.  (Tr. 648).  She was getting treatment at a Comprehensive Care Center for her difficulty in dealing with stress and pressure and had found the medication Lexapro helpful, although she could not afford to buy it currently.  (Tr. 645-6).  She described her biggest stressor as losing her job and not having money.  However, she helped take care of her daughter's child and her son's two children during the week, and was capable of driving short distances, balancing the family checkbook, and attending activities such as auctions on weekends with her husband.  (Tr. 638, 64).

The plaintiff alleges on appeal that the ALJ improperly rejected the opinion of her treating physicians.  Although no specific treating physician or set of restrictions is identified in the plaintiff's brief, her reference presumably is to Dr.

---

[1] The ALJ found that the plaintiff's reflux disease, while present, did not result in any restrictions.  (Tr. 16, 18).  The plaintiff does not challenge this conclusion on appeal.  The ALJ additionally assessed no specific restrictions due to the plaintiff's heart condition, based on the statement of her treating cardiologist in May, 2007 that her cardiomyopathy and shortness of breath were well controlled on medications.  (Tr. 278).  The court notes that no examining or reviewing physician placed any restrictions on the plaintiff due to these conditions.

Franklin Belhasen, who performed bilateral carpel tunnel release surgeries in February and March, 2005. (Tr. 144, 163). Following the surgery, in December, 2005, Dr. Belhasen reported that the plaintiff had a good functional outcome in her left wrist, but still had a sharp shooting pain in her right hand. (Tr. 226). He opined that she no longer had the capacity to use either upper extremity repetitively, could do no overhead lifting, and could do no "heavy lifting greater than 10-15" pounds. (Id.). Depending on her background and training, Dr. Belhasen thought it was possible that she could return to work in some capacity. (Id.).

The ALJ cited several grounds for not accepting all of Dr. Belhasen's restrictions. He noted that a consultative evaluation by Dr. Robert Hoskins in August, 2007 was largely unremarkable other than showing a somewhat weak grip. (Tr. 21, 323). Primarily, however, he appeared to base his conclusions on the report of a functional capacity evaluation (FCE) by therapist Jeff Caudill in October, 2005, which states that Mrs. Phillips was capable of performing at least light level exertion and would have to perform hand coordination activities slowly. (Tr. 20, 228-35). The ALJ also cited an occupational therapist, Misti Bond, who noted excellent progress after four treatment sessions in the summer of 2005. (Tr. 21, 185). However, this treatment was discontinued because Dr. Belhasen allowed the plaintiff to return to her job as a seamstress (Id.), and Mrs. Phillips was only able to

8

work for two weeks before her carpel tunnel symptoms came back (Tr. 640).  No functional restrictions were given.

The problem with accepting the Caudill FCE as supporting the hypothetical question is that every examining physician including Drs. Belhasen, Riley, and Hoskins appeared to indicate that the plaintiff would be limited to less than the "frequent" handling assumed in the hypothetical question.  Although Dr. Hoskins did not list functional restrictions very specifically, he did state that repetitive wrist and finger movements would risk exacerbating and worsening the plaintiff's symptoms. (Tr. 323).  Dr. Riley, <u>after</u> reviewing the FCE, advised the plaintiff to avoid repetitive activity as much as possible.  (Tr. 182).  Finally, Dr. Belhasen indicated that Mrs. Phillips did not have the capacity to use either upper extremity "repetitively."  (Tr. 226).  To a lay reviewer, there is nothing in the FCE that specifically addresses the repetitive use of the upper extremities.  The FCE does cover items such as the ability to sit, stand, and perform other postural activities, and it indicates that the plaintiff had no medical limitations with "hand coordination" although her scores were below average and such activities would be performed slowly.  (Tr. 230, 232). It also stated that, over the two-day evaluation, the plaintiff had discomfort in the right wrist when right hand grip was required but she was able to work through the discomfort.  (Tr. 229).  This does clearly equate to a finding that the plaintiff would be able to perform repetitively for an indefinite period, however.

The opinion of a state agency non-examining physician, Dr. Amanda Lange, is also facially inconsistent with the hypothetical question because Dr. Lange specified that the plaintiff could perform frequent handling with a "break of 2 minutes after 20 minutes of continuous manipulation." (Tr. 270). "Frequently" is defined on the form Dr. Lange prepared as meaning "one-third to two-thirds of an 8-hour work day" (Tr. 267), so she must have assumed that the specific requirements for a break every 20 minutes would have been in excess of this standard definition.  Dr. Lange also stated that she gave Dr. Riley's mention of "frequent breaks" great weight.  (Tr. 273).  A subsequent state agency reviewer, Dr. P. Saranga, did indicate that the plaintiff was capable of frequent handling bilaterally, but also asserted that he was affirming the previous residual functional capacity assessment.   (Tr. 335-6).  Therefore, although his literal findings are consistent with the hypothetical question, the fact that Dr. Saranga appeared to be affirming Dr. Lange's inconsistent assessment calls his opinion into question.  The other grounds cited by the ALJ for discounting greater limitations in handling was a reference in Dr. Riley's report to electrodiagnostic testing documenting mild bilateral median neuropathy at the wrists, right greater than left.  (Tr. 21, 181).  The ALJ apparently felt that the electrodiagnostic findings were not consistent with Dr. Riley's restrictions, but once again this is not obvious to a lay reviewer.  The ALJ also felt that the plaintiff's daily activities including caring for her grandchildren were not fully appreciated by the

physician, but the FCE which Dr. Riley was also reviewing mentions the plaintiff's daily activities as including housecleaning and caring for a 15-month-old grandchild. (Tr. 235).

Given the fact that the plaintiff's treating surgeon, two other examining physicians, and one state agency reviewing physician all felt that the plaintiff's ability to handle objects would be less than given in the hypothetical question, a remand will be required for further evaluation of this issue, ideally from a medical expert with access to all of the evidence.

The plaintiff also argues that the ALJ erred in not including "a more complete assessment of his physical and mental state . . . including his mental and physical maladies" in the hypothetical question.  The Sixth Circuit has categorically rejected this assertion, however.  Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004).

The decision will be remanded for further consideration.

This the 28th day of April, 2011.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**